NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In the matter of | : | Case No.  03-438946/JHW |
| Family Theatre, LLC | : | |
| Debtor | : | |
| | : | |
| Andrew Sklar, Chapter 7 Trustee | : | Adversary No. 06-1179 |
| Plaintiff | : | |
| v. | : | |
| Daniel C. Munyon, Mary Ann Munyon, Pitman Family Entertainment LLC, | : | **OPINION** |
| Merit Funding Group, a/k/a Merit Financial Group, Kenneth Klein, | : | |
| 4H Investment Mutual, LLC, | : | |
| Mordecai L. Smith, Sterling Acquisitions, Inc., Douglas E. Burch, | : | |
| Warsowe Acquisition Corporation, Richard Zucchini and Transcontinental Lending Group, Inc. | : | |
| | : | |
| Defendants | | |

FILED
JAMES J. WALDRON, CLERK
November 14, 2006
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: Terry O'Brien
Judicial Assistant to
Chief Judge Wizmur

APPEARANCES:   Stephen C. Hunt, Esq.
Adorno & Yoss LLP
350 E. Las Olas Boulevard, Suite 1700
Fort Lauderdale, Florida  33301
Co-Counsel for Transcontinental Lending Group

A. Margaret Hesford, Esq.
5648 West Atlantic Boulevard
Margate, Florida  33063
Co-Counsel for Transcontinental Lending Group

> Stephen M. Packman, Esq.
> Jerrold S. Kulback, Esq.
> Archer & Greiner
> One Centennial Square
> Haddonfield, New Jersey  08033
> Counsel for the Chapter 7 Trustee

Defendant Transcontinental Lending Group ("Transcontinental"), along with co-defendant Richard Zucchini, filed a joint motion to dismiss the Chapter 7 trustee's adversary complaint, accompanied by a Notice of Jury Demand. Transcontinental also moved for summary judgment. Oral argument was heard on September 25, 2006 and both motions were denied. Remaining to be resolved, particularly in light of the defendants' Notice of Jury Demand, is whether the cause of action asserted by the Chapter 7 trustee against the defendants in this adversary proceeding should be characterized as a core or non-core matter for purposes of 28 U.S.C. § 157(b) and (c).

## **FACTS**

On September 3, 2003, Family Theatre, LLC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The debtor was the owner of a theater located in Pitman, New Jersey. By order dated January 18, 2005, the Bank of Gloucester County was granted relief from the automatic stay to continue foreclosure proceedings. On March 29, 2005, the debtor's case was

converted to Chapter 7. The Chapter 7 trustee and the Bank entered into a consent order on April 28, 2005 staying the Bank's sheriff sale for 180 days to offer the trustee the opportunity to sell the property. If the trustee failed to timely consummate such a sale, the order granted the Bank relief from the automatic stay without further application to the court.

During the summer of 2005, the sale of the theater to the Veronica Goodman Agency, Inc. was approved by the bankruptcy court. When Goodman failed to close, the trustee sought to vacate the approval and to authorize a sale to Mathew George. Prior to the resale hearing, Daniel C. Munyon and Mary Ann Munyon, the principals of the debtor, Family Theater LLC, submitted a competing offer to purchase the theater. On September 19, 2005, the trustee and the Munyons executed an agreement of sale for the theater which was approved by the court. Closing was scheduled for September 26, 2005, with Pitman Family Entertainment LLC, the Munyons' company, designated as the buyer. When the Munyons informed the trustee of a delay in their financing, the trustee agreed to extend the closing until October 28, 2005. The Munyons failed to obtain financing. The Bank received relief from the automatic stay and scheduled a sheriff's sale of the property for December 7, 2005.

The Transcontinental Lending Group, Inc. and its principal, Richard Zucchini, became involved after Transcontinental entered into an "Exclusive Placement Agreement" with Munyon on or about December 1, 2005, to seek a loan commitment on Munyon's behalf. Zucchini and Transcontinental obtained a Preliminary Loan approval letter from the Warsowe Acquisition Group ("Warsowe") offering preliminary and conditional approval for a loan to Munyon in the amount of $580,000. The letter was appended to Munyon's motion filed on December 5, 2005, seeking to reinstate the stay pending a closing on the loan. Based on the prospect that refinancing could be achieved, the Bank was enjoined on December 7, 2005 from proceeding with the sheriff's sale of the property until after January 31, 2006, the anticipated date to close on the loan. On or about January 27, 2006, Warsowe declined to fund the proposed purchase. The property was then sold at sheriff's sale on February 1, 2006.

On February 1, 2006, Andrew Sklar, the Chapter 7 trustee filed an adversary complaint against the Munyons, Warsowe Acquisition Corporation and others, seeking damages for breach of contract, promissory estoppel, and fraud. The Munyons reached an agreement with the trustee, gaining a release from liability to the estate in exchange for an assignment to the trustee of all of the Munyons' claims against the other named defendants in the complaint.

Richard Zucchini was expressly named as a party in the assignment agreement between the Munyons and the trustee, but Transcontinental was not. An amended complaint was filed by the trustee on June 30, 2006, naming both Transcontinental Lending Group, Inc. and Richard Zucchini as additional defendants. In a new Count VIII, the trustee advanced a claim for breach of contract with respect to the "Exclusive Placement Agreement" executed by Munyon contending that:

> Zucchini and/or Transcontinental breached the Placement Agreement by, <u>inter alia</u>, failing to use their best efforts to [sic] financing on behalf of Munyon to purchase the Property, by placing Munyon with Warsowe whom Zucchini and/or Transcontinental knew or should have known that Warsowe would not provide financing to Munyon, by abandoning Munyon once Warsowe refused to provide financing to Munyon, [sic] otherwise by breaching the duty of good faith and fair dealing inherent in the Placement Agreement.

One month after the trustee's Amended Complaint was filed, on July 26, 2006, the Munyons and Pitman Family Entertainment executed a General Release in favor of Zucchini and Transcontinental, purporting to release the two defendants from any liability to the Munyons and to the bankruptcy estate.

On August 21, 2006, Transcontinental filed this joint motion with Zucchini to dismiss the first amended complaint on various grounds, including: (1) lack of subject matter jurisdiction, (2) lack of personal

-5-

jurisdiction and (3) failure to state a claim.  Alternatively, the defendants requested that the court abstain from adjudicating the matter.  Transcontinental also moved for summary judgment, asserting, inter alia, that the Munyons only assigned their claims against Zucchini to the trustee, and did not assign their claims against Transcontinental.  As well, Transcontinental contended that it was released by the Munyons from any liability to them or to the bankruptcy estate.

Before the defendant's motions were heard in court, the Munyons executed an amended assignment, dated September 14, 2006, adding Transcontinental to the list of potential parties against whom the Munyons may have held claims, and assigning those claims to the trustee.

At oral argument on September 25, 2006, for the reasons expressed during the discussion, the defendants' joint motion to dismiss and Transcontinental's motion for summary judgment were both denied.  Reserved for resolution was the issue of whether the cause of action asserted by the Chapter 7 trustee against Transcontinental and Zucchini should be characterized as a core proceeding under 28 U.S.C. § 157(b), or as a non-core proceeding under 28 U.S.C. § 157(c)(1).  As noted earlier, the joint motion to dismiss filed by the defendants included a Notice of Jury Demand.  If the

matter is determined to be non-core, and the parties do not consent to the entry of final judgment by the bankruptcy court under 28 U.S.C. § 157(c)(2), then the jury trial would be conducted in the district court.[1]

## **DISCUSSION**

Original jurisdiction over bankruptcy cases is vested in the federal district court by operation of 28 U.S.C. § 1334. In re Combustion Engineering, Inc., 391 F.3d 190, 225 (3d Cir. 2004). This grant of original jurisdiction is exclusive with respect to the filing of bankruptcy case, see 28 U.S.C. § 1334(a) (granting the district court "original and exclusive jurisdiction of all cases under title 11"), and as to all property of the bankruptcy estate, see 28 U.S.C. § 1334(e). The phrase "all cases under title 11", as used in section 1334(a), is commonly understood to encompass the filing of the petition for relief under the Bankruptcy Code. See Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006); In re Combustion Engineering, Inc., 391 F.3d 190, 226 n.38 (3d Cir. 2004); In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991).

---

[1] Section 157(c)(1) provides that the bankruptcy court may hear a non-core matter and issue proposed findings of fact and conclusions of law to the district court. The district court will then enter any final order or judgment upon de novo review. This opportunity, however, is not available in the context of a jury trial, because the Seventh Amendment does not permit de novo review of a jury verdict. See Beard v. Braunstein, 914 F.2d 434, 442-43 (3d Cir. 1990).

This grant of jurisdiction is not customarily exercised directly by the district courts. Instead, the district courts routinely refer all bankruptcy cases to the bankruptcy courts. See 28 U.S.C. § 157(a). For example, in New Jersey, pursuant to a standing order, all bankruptcy cases are automatically referred to and filed directly with the bankruptcy court. See Standing Order of the United States District Court for the District of New Jersey dated July 23, 1984.

Section 1334 also grants original but not exclusive jurisdiction to the district court, and by reference, to the bankruptcy court, in three other categories of cases: civil proceedings arising under title 11, civil proceedings arising in cases under title 11, and civil proceedings related to cases under title 11. See 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."). The phrase "arising under title 11" includes causes of action expressly authorized by the Bankruptcy Code, e.g., proceedings to recover a fraudulent transfer or an unauthorized post-petition transfer, or an action to avoid a preference. The phrase "arising in" encompasses "claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." Stoe, 436 F.3d at 218. "In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have

no existence outside of the bankruptcy." In re Wood, 825 F.2d 90, 97 (5th Cir. 1987). A proceeding is considered to be "related to cases under title 11 when 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" In re Pacor, Inc., 743 F.2d 984, 994 (3d Cir. 1984). See also Celotex v. Edwards, 514 U.S. 300, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995); In re Velocita Corp., 169 Fed.Appx. 712, 715 (3d Cir. 2006); Stoe, 436 F.3d at 216; In re Zinchiak, 406 F.3d 214, 226 (3d Cir. 2005).

"Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings." In re Combustion Engineering, Inc., 391 F.3d at 225. See 28 U.S.C. § 157(b)(1) and 157 (c)(1). An illustrative, non-exhaustive list of core proceedings is set forth in 28 U.S.C. §157(b)(2). In core proceedings, the bankruptcy court has the "comprehensive power to hear, decide and enter final orders and judgments." Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999) (citing to 28 U.S.C. § 157(b)(1)). "In a non-core proceeding, the bankruptcy court is allowed only to make proposed findings of fact and proposed conclusions of law, which it submits to the district court." In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006) (citing to 28 U.S.C. § 157(c)(1)). The bankruptcy court is authorized, on its own motion or on the "timely motion of a

party," to determine whether a proceeding comes within the court's core or non-core authority.  28 U.S.C. §157(b)(3).  See In re Sheridan, 362 F.3d 96, 102 (1st Cir. 2004) ("absent the parties' allegations, the bankruptcy court is required in all cases to make a sua sponte determination as to whether or not a proceeding is core"); In re G.A.D., Inc., 340 F.3d 331, 336 (6th Cir. 2003); In re Kontrick, 295 F.3d 724, 732-33 (7th Cir. 2002), aff'd, 540 U.S. 443, 124 S. Ct. 906, 157 L.Ed.2d 867 (2004).

The issue presented in this case is whether the trustee's cause of action against the defendants, arising post-petition and received through a post-petition assignment from the principals of the debtor, "arises in" a case under Title 11, and may therefore be designated as a core proceeding, or whether it is merely "related to" the bankruptcy case, and therefore more properly categorized as a non-core matter.

To determine whether a proceeding is a core proceeding, courts in the Third Circuit must consult two sources.  First, the court must compare the matter to the illustrative list of core proceedings listed in 28 U.S.C. §§ 157(b)(2)(A) through (O).  Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999).  In this regard, courts have cautioned that sections 157(b)(2)(A) ("matters concerning the administration of the estate") and 157(b)(2)(O) ("other

proceedings affecting the liquidation of the assets of the estate") should not be interpreted so broadly that all proceedings would be designed as core. See, e.g., In re Apex Exp. Corp., 190 F.3d 624, 631 (4th Cir. 1999) ("a broad reading of the literal terms of the statutory text could lead to the result that courts treat just about every dispute as 'core'"); In re Best Products Co., 68 F.3d 26, 31 (2d Cir. 1995) ("We recognize that such an open-ended, limitless construction would be incorrect."); In re Cassidy Land and Cattle Co., 836 F.2d 1130, 1132 (8th Cir.), cert. denied, 486 U.S. 1033, 108 S. Ct. 2016, 100 L.Ed.2d 603 (1988) ("Courts have cautioned against a broad interpretation of these catchall provisions for fear of emasculating the mandate of Marathon."). The focus is on whether the claims, "by their nature, not their particular factual circumstance," fall within the spectrum of matters included on the core list. Stoe v. Flaherty, 436 F.3d 209, 218 (3d Cir. 2006).

Second, the court must apply the Third Circuit test to determine core status. Under that test, "'a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" In re The Guild and Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996) (quoting Marcus Hook, 943 F.2d at 267)). See also In re Continental Airlines, 125 F.3d 120, 131 (3d Cir. 1997), cert. denied, 522 U.S. 1114, 118 S. Ct. 1049, 140 L.Ed.2d 113

(1998). This test was first articulated in Beard v. Braunstein, 914 F.2d 434, 444 (3d Cir. 1990).

In Beard, the Third Circuit addressed the core vs. non-core status of a trustee's claim for both pre and post-petition rents arising from the breach of a prepetition contract. Beard was the Chapter 7 trustee for the bankruptcy estate of the Greater Pittsburgh Business Development Corporation. The trustee brought an adversary proceeding to recover both prepetition and post-petition rent from Braunstein for his use of commercial property owned by the debtor. The court determined that Braunstein was entitled to a jury trial to assert his defense and counterclaim, and recognized that if the proceeding were designated as non-core, the matter could not be tried in bankruptcy court.[2]

Quoting from the Marathon and Granfinanciera decisions of the United States Supreme Court, the Court of Appeals confirmed that traditional state law contract actions between private parties, like the debtor's claim for pre-petition rent being prosecuted by the Chapter 7 trustee, are not core matters. Beard, 914 F.2d at 443 (referring to Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 69, 102 S. Ct. 2858, 2870, 73 L.Ed.2d 598 (1982)

---

[2] See n.1 supra.

and Granfinanciera S.A. v. Nordberg, 492 U.S. 33, 109 S. Ct. 2782, 106 L.Ed.2d 26 (1989)). Accordingly, the trustee's cause of action for pre-petition rent, while related to the case, was properly designated as non-core. As to the post-petition contractual damages arising from the pre-petition contract, the court juxtaposed several appellate decisions. In two decisions in which the proceedings were designated as non-core, including In re Castlerock Properties, Inc., 781 F.2d 159 (9th Cir. 1986) and In re Wood, 825 F.2d 90 (5th Cir. 1987), the proceedings involved state law contract claims based on pre-petition contracts "that could [have] proceed[ed] in another court even in the absence of bankruptcy." Wood, 825 F.2d at 96. Castlerock Properties held that "state law contract claims which do not fall within the specific categories of core proceedings listed in 28 U.S.C. § 157(b)(2)(B)-(N) are non-core, even if they arguably fall within the two 'catch-all' provisions." 914 F.2d at 444. In contrast, in two decisions in which the proceedings were designated as core, In re Arnold Print Works, Inc., 815 F.2d 165 (1st Cir. 1987) and In re Ben Cooper, Inc., 896 F.2d 1394 (2d Cir. 1990),[3] two decisions in which the proceedings were designated as core, the matters involved post-petition contracts made

---

[3] The Supreme Court vacated the decision and remanded the case to allow the circuit to first address an appellate jurisdictional concern. Insurance Co. of State of Pa. v. Ben Cooper, Inc., 498 U.S. 964, 111 S. Ct. 425, 112 L.Ed.2d 408 (1990). The Second Circuit held there was appellate jurisdiction and reinstated its judgment in In re Ben Cooper, Inc., 924 F.2d 36 (2d Cir.), cert. denied, 500 U.S. 928, 111 S. Ct. 2041, 114 L.Ed.2d 126 (1991).

with the debtor in possession that were an integral part of the administration or liquidation of the debtor's estate. In <u>Arnold Print Works</u>, the dispute involved the post-petition sale of estate assets. In <u>Ben Cooper</u>, the dispute concerned an insurance contract entered into by the debtor in compliance with the debtor's confirmed plan of reorganization.

Although the <u>Beard</u> court characterized these two groups of cases as representative of "a split of authority on this point", <u>Beard</u>, 914 F.2d at 443, the cases are entirely consistent with each other and with the constitutional dictates of <u>Marathon</u>. As Justice Brennan noted in <u>Marathon</u>, state-created private rights, such as the right to recover contract damages, may not be adjudicated to final judgment by a non-Article III bankruptcy court, while issues pertaining to "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power," may be assigned by Congress to be adjudicated by a bankruptcy court. <u>Marathon</u>, 458 U.S. at 71, 102 S. Ct. at 2871, 73 L.Ed 2d at 615. The "garden variety contract claims" in <u>Castlerock</u> and <u>Wood</u> are clearly non-core matters, while the issues that are integral to the administration of the bankruptcy, like the disputes in <u>Arnold Print Works</u> and <u>Ben Cooper</u>, are core matters.

Subsequent Third Circuit cases addressing the core vs. non-core

question, including Marcus Hook, In re Guild and Gallery and Halper v. Halper have consistently followed the Beard formulation to require that a court first consult the illustrative list of core matters in 28 U.S.C. § 157(b)(2), and then consider whether a substantive right under Title 11 is invoked, or whether the proceeding, by its nature, could have arisen only in a bankruptcy case. In Marcus Hook, a purchaser of property from the bankruptcy estate sought clarification from the bankruptcy court of two conflicting bankruptcy court orders regarding the validity of liens asserted against the property purchased, one involving the sale of the property and the other confirming the debtor's Chapter 11 plan. The Court of Appeals concluded that the matter was a core proceeding because it fit within two of § 157(b)'s illustrative examples, including section 157(b)(2)(K) ("determinations of the validity, extent, or priority of liens") and section 157(b)(2)(N) ("orders approving the sale of property"). As well, the matter required the resolution of two conflicting bankruptcy court orders entered during the case, which could only have arisen in the context of the case. Id. 943 F.2d at 267.

Similarly, in In re Guild and Gallery, the Court of Appeals applied the same formulation to conclude that the matter before it was not a core proceeding. In Guild, a bailee of property that was not property of the estate sued the Chapter 7 trustee in bankruptcy court for negligence and intentional

wrongdoing in connection with the loss of his property. The court concluded that the matter was not a core proceeding because the matter did not involve any of the illustrative examples of core proceedings listed in section 157(b)(2). In particular, the claims did not fall under § 157(b)(2)(A) ("matters concerning the administration of the estate") because the missing property was not property of the estate. As well, the court observed that the claims against the trustee did not invoke a substantive right under Title 11, and the "claims certainly could exist outside of bankruptcy; they could all be filed in a state court."[4]   72 F.3d at 1178.

More recently, the Third Circuit revisited the core vs. non-core distinction in Halper v. Halper. In Halper, various claims were asserted by a third party against the debtor and a non-debtor. As to the claims against the debtor, the court concluded that those matters involving section 157(b)(2)(B) ("allowance or disallowance of claims against the estate or exemptions from property of the estate") and section 157(b)(2)(H) (" proceedings to determine, avoid, or recover fraudulent conveyances") were core proceedings. 164 F.3d at 837. As to the state law claims for breach of a pre-bankruptcy contract to which the debtor

---

[4] The court in Guild concluded further that the causes of action against the trustee were not related to the bankruptcy case and were not non-core proceedings, because the result "'could [not] conceivably have any effect on the estate being administered in bankruptcy.'" 72 F.3d at 1181 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

was not a party, such claims were not core proceedings because they did not "invoke[] a substantive provision of the bankruptcy code," and were not "the type of claim[s] that can only be entertained in bankruptcy." Id. at 838.

Here, we are presented with the state law breach of contract claims of the Munyons, the principals of the debtor, against a brokerage company and its principal, claiming that the broker failed to exercise its best efforts on the Munyons' behalf, and thus breached the implied covenant of good faith and fair dealing. The Munyons' cause of action against Transcontinental and Zucchini were assigned to the trustee, who stands in the Munyons' shoes to assert the claims. At first blush, because the defendants Transcontinental and Zucchini participated with Munyon in presenting to the bankruptcy court the prospect that financing would most likely be available to the Munyons to buy the only asset of the bankruptcy estate, which caused the court to stay the sheriff sale scheduled in December 2005, the cause of action asserted by the trustee might appear to fall within the literal meaning of section 157(b)(2)(A), i.e., "matters concerning the administration of the estate." However, as noted, the trustee is prosecuting the Munyons' cause of action by assignment. The underlying action is between third parties to the bankruptcy estate. The matter does not pertain to the administration of the bankruptcy estate. Nor does the matter invoke any substantive rights under Title 11, or qualify as the type of claim

-17-

that can only be invoked in the context of the bankruptcy case. Obviously, a breach of contract claim of the type alleged here may arise in any context. While the claim does have some connection to the bankruptcy, in that the trustee, if successful, could recover damages from the defendants, the claim is only "related to" the debtor's case and may not be designated as a core proceeding.[5] Absent the consent of the parties under 28 U.S.C. § 157(c)(2), this court may not hold a jury trial to resolve the dispute.

Counsel for the defendants shall submit an order in conformance with this opinion.

Dated:   November 14, 2006

_____
JUDITH H. WIZMUR
CHIEF U.S. BANKRUPTCY JUDGE

---

[5]  To be distinguished here is a line of cases that hold that the bankruptcy court has core jurisdiction over claims arising from a contract formed post-petition under § 157(b)(2)(A). See, e.g., In re United States Lines, Inc., 197 F.3d 631, 637-38 (2d Cir. 1999) and In re Coram Healthcare Corp., No. 00-3299(MFW), 2003 WL 22948234 (Bankr. D.Del. Dec. 12, 2003). As was recognized in the case of In re Northwestern Instit. of Psychiatry, Inc., 268 B.R. 79, 89 (Bankr. E.D.Pa. 2001), "it is not merely the fact that a contract is entered post-petition but also the fact that it is integral to the reorganization case that gives it its core character." See also In re Agri-Concrete Prods., Inc., 153 B.R. 673, 677 (Bankr. M.D.Pa. 1993) ("The adjudication of [post petition contract] claims is an essential part of administering the estate."). Here, the contract for brokerage services was entered into post-petition, but was not entered into by the debtor or the trustee, and was not integral to the administration or liquidation of the bankruptcy estate.